Louis WHATLEY, Plaintiff,

v.

SKAGGS COMPANIES, INC.,
Defendants.

Civ. A. No. 76–C–449.

United States District Court,
D. Colorado.

Feb. 23, 1981.

Paul A. Baca, Denver, Colo., for plaintiff.

Earl K. Madsen, Golden, Colo., for defendants.

## SUPPLEMENTAL FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

CARRIGAN, District Judge.

THIS MATTER is before the Court for determination of the proper amount of back pay and attorney's fees to be awarded the plaintiff, Louis Whatley. Whatley prevailed against the defendant Skaggs Companies, Inc., on claims of employment discrimination brought under Title VII, 42 U.S.C. §§ 2000e, *et seq.*, as amended, and the Civil Rights Act of 1870, 42 U.S.C. § 1981. *See* this Court's Opinion filed November 25, 1980. At the parties' request, a hearing on these questions was held and additional evidence was received.

## I. *Specific Findings and Conclusions.*

Skaggs intends to appeal from this Court's finding that Skaggs is liable to Whatley for employment discrimination. Subject to that reservation, the parties have stipulated that Whatley is entitled to $5,115.00 in attorney's fees.

The parties also have stipulated that, had Whatley remained with Skaggs as a lobby manager, his additional earnings during the time at issue would have totaled $118,-169.53. This figure reflects an offset for Whatley's earnings at Skaggs' warehouse from September, 1971, to June, 1973. The parties agree that Skaggs is entitled to offset an additional $14,603.59 because of Whatley's full-time employment earnings at Gold Star Beef Company and at A C & S, Inc. during 1974 and 1975.

The parties disagree, however, on whether Skaggs may offset Whatley's part-time, "moonlight" earnings during 1971 through 1974 and his earnings from self-employment during 1975, 1979, and 1980. The parties also disagree on whether Whatley is entitled to have an amount equal to what he would have received through Skaggs' profit-sharing plan included in his back pay award.

The rule on "moonlighting" earnings is best stated in *Bing v. Roadway Express, Inc.*, 485 F.2d 441, 454 (5th Cir. 1973). A plaintiff's "moonlighting" earnings will be offset against his backpay award if he would have been unable to hold the "moonlighting" job simultaneously with the job he lost because of discrimination.

Whatley testified, both at trial and at the post-trial back pay hearing, that as lobby manager he worked ten to twelve hours a day, six or seven days a week. Although he testified at the hearing that Skaggs did not *require* him to work more than an eight-hour day, or more than five days a week, the responsibilities of his management position and the incentives of faster promotion and larger bonuses render it more likely than not that Whatley would have continued to work long hours had he

remained a lobby manager. Therefore he would not have been able to "moonlight." Consequently, Skaggs is entitled to offset $14,329.79 because of Whatley's "moonlighting" earnings at the Dillon Companies and School District No. 1 during 1971–74.

Skaggs is not, however, entitled to offset Whatley's self-employment earnings in 1975, 1979, and 1980. In 1975, Whatley earned $732.77 while helping his wife operate her business. These earnings reflect work he easily could have performed in spare time, on an occasional basis, to help the family business. Such earnings should not be offset. *See Buck v. Board of Education*, 10 E.P.D. ¶ 10,363 (E.D.N.Y.1975).

Whatley suffered a disability in November, 1975, and did not work at all during 1976, 1977, or 1978.[1] In 1979, Whatley again was able, occasionally, to help his wife with her business, but he drew no wages. Effectively, he was still disabled, and Skaggs is not entitled to an offset for this year.

The Whatleys purchased a duplex in Denver in 1959. Whatley and his immediate family lived in one unit, and his wife's parents lived rent-free in the other unit. In February, 1980, the Whatleys, with Mrs. Whatley's parents, moved to Mesa, Arizona. They sold their duplex on an installment sale contract, retaining title until fully paid. The Whatleys receive $830.00 per month pursuant to this contract. Skaggs claims that the amounts received from this arrangement should be offset since Whatley testified at his deposition in July, 1980 that he was "in the real estate business."

Mr. Whatley clarified this statement at the back pay hearing. Mr. Whatley owns no income property other than the Denver duplex. He is not in the business of buying and selling real estate, and he has never been licensed as a realtor or broker. Whatley explained that he has sometimes described himself as being "in the real estate business" to avoid the embarrassment and stigma of admitting that he is unemployed at age forty-five with no obvious disability. The Court finds as a fact that the monthly payments from the land contract on the Denver duplex constitute proceeds from the sale of Whatley's personal residence. These payments are not earnings within the meaning of Title VII, 42 U.S.C. § 2000e–5(g). Hence Skaggs is not entitled to any offset for these payments.

Finally, Whatley claims that $5,997.75 should be added to his back pay award to compensate him for the profit-sharing benefits he lost when he left Skaggs. A back pay award may include "profit sharing . . . to which plaintiff would have been entitled had [he] been continued in [his] employment." *EEOC v. Kallir, Phillips, Ross, Inc.*, 401 F.Supp. 66, 74 (S.D.N.Y.1975), *aff'd mem.*, 559 F.2d 1203 (2d Cir.), *cert. denied*, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977).

In this case, however, Whatley immediately reentered Skaggs' employ after he was terminated as a lobby manager, and his profit-sharing rights were not terminated when he was ousted as lobby manager. Rather, those rights continued until he voluntarily quit his warehouse job before his profit sharing had vested. This Court has already found that Whatley's dismissal as lobby manager in September, 1971, was a termination, and that his employment at the warehouse had the same legal effect as a new job. Whatley left that warehouse job voluntarily for reasons not directly related to any act of discrimination by Skaggs, and, by leaving, lost his profit-sharing rights. Although Whatley forfeited the funds previously credited to his profit-sharing account by resigning before the six-year vesting period, that forfeiture did not inure to Skaggs' benefit. Whatley's account is

---

1. Although an argument might be made that Whatley should receive no back pay during the time he was disabled, *see Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 267–68 (10th Cir. 1975), the facts do not justify the application of that rule in this case. Here, Whatley would not have suffered his disabling back injury had Skaggs not terminated him as lobby manager. Skaggs' act of discrimination forced Whatley from his management position into blue-collar jobs that required strenuous physical labor resulting in injury to his back.

merely redistributed to the accounts held for the other plan participants.

For these reasons, Whatley is not entitled to have an amount equal to his profit-sharing account included in his back pay award.

Accordingly,

IT IS ORDERED that judgment be entered for the plaintiff and against the defendant in the amount of $89,236.15. Plaintiff is entitled to costs.

IT IS FURTHER ORDERED that the defendant pay Paul A. Baca $5,115.00 in attorney's fees.