EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

NORTHWESTERN MEMORIAL
HOSPITAL, Defendant.

No. 92 C 5597.

United States District Court,
N.D. Illinois,
Eastern Division.

July 19, 1994.

John C. Hendrickson, Mary C. Ambrose–Gerak, Gregory M. Gochanour, U.S. E.E.O.C., Chicago, IL, for plaintiff.

William J. Holloway, Daniel Keenan Ryan, Hinshaw & Culbertson, Chicago, IL, for defendant.

## MEMORANDUM OPINION

GRADY, District Judge.

This suit alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, is brought by the Equal Employment Opportunity Commission, ("the EEOC"), on behalf of complainant Janet Widmont, against defendant Northwestern Memorial Hospital ("Northwestern"). The case is before the court on defendant's motion for summary judgment and plaintiff's motion for partial summary judgment. For the reasons discussed below, defendant's motion is granted in part and denied in part, and plaintiff's motion is denied.

## FACTS

In September 1979, Janet Widmont was hired by Northwestern as a Respiratory Therapist, Grade 8, in the Respiratory Care Department. Prior to joining the staff at Northwestern, Widmont received an Associate in Science degree in respiratory therapy and practiced as a respiratory therapist for both adult and child patients at another hospital for several years. After a series of written, oral, and clinical examinations, she was designated a Registered Respiratory Therapist by the National Board for Respiratory Therapy. During her first four years at Northwestern, Widmont was promoted through the ranks to several supervisory/managerial positions, concluding with her promotion to Coordinator of the Neonatal Intensive Respiratory Care Unit, the Grade 11 position in which she last served. In this capacity, she directed all aspects of the unit and supervised managers, respiratory specialists, and staff respiratory therapists.

Widmont became pregnant in 1987. Due to complications with her pregnancy, she took a leave of absence beginning in January 1988. Several weeks after her daughter's

birth in March 1988, she contacted John Peterson, her immediate supervisor and Director of Northwestern's Respiratory Care Department, to discuss her return to work. Peterson visited Widmont at home and informed her that the coordinator position recently had been eliminated during a reorganization of the department. As a follow-up to this conversation, Peterson sent Widmont a letter on April 21, 1988, offering her two alternatives: (1) a position as a Grade 8 Respiratory Therapist, or (2) a severance package. The letter required her to make a decision by April 27, but this deadline was later extended at her request to May 2, at which time she accepted severance. Following her termination from Northwestern, Widmont sought and eventually obtained other employment, although at lower wages than either the coordinator position or the respiratory therapist position at Northwestern. She continued working in her field until a disabling skin condition required her to quit in June 1992.

During roughly the same time period in which Widmont learned that her position had been eliminated and accepted the severance package, three positions arguably either became available or were created at Northwestern: (1) Respiratory Specialist, (2) Assistant Director of Respiratory Care, and (3) Technical Supervisor. The EEOC argues that Northwestern should have offered these three positions to Widmont in keeping with its policy of giving an employee whose position has been eliminated preference for any open position for which she possessed at least the minimum qualifications. The EEOC maintains that in failing to follow this policy, Northwestern discriminated against Widmont on the basis of her sex and recent pregnancy in violation of Title VII. The parties vigorously dispute whether the policy required defendant to give preference to an eliminated employee with the minimum qualifications over someone more qualified, whether these positions were actually available at the relevant time, whether Widmont possessed the requisite qualifications, and whether Northwestern was motivated by discriminatory reasons in not offering the positions to Widmont. Plaintiff contends that there are no material facts in dispute regarding the availability of and Widmont's qualifications for the respiratory specialist position. On this basis alone, plaintiff argues that it is entitled to summary judgment. Defendants have filed a cross-motion for summary judgment, claiming that plaintiff has no evidence of discrimination regarding any of the three positions.

## DISCUSSION

### I. Evidence of Discrimination under Title VII

As a preliminary matter, we note that the EEOC concedes in its summary judgment papers that the elimination of Widmont's position was not discriminatory, but rather occurred pursuant to a legitimate reduction in force. Thus, defendant's motion for summary judgment is granted as regards the claim of discriminatory termination stated in paragraph six of the complaint. We proceed to consider the summary judgment motions insofar as they pertain to plaintiff's claim of discrimination in the decision not to offer Widmont the three available positions.

Resolution of the remaining issues in the cross-motions for summary judgment requires us to sift through the extensive exhibits presented by both parties to determine whether the case presents a triable issue of fact. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "A genuine issue of material fact exists only where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Dribeck Importers, Inc. v. G. Heileman Brewing Co., 883 F.2d 569, 573 (7th Cir.1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). In considering such a motion, the court must view all inferences in the light most favorable to the nonmoving party. See Regner v. Chicago, 789 F.2d 534, 536 (7th Cir.1986). Once the mov-

ing party has supported its motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings"; rather, the adverse party must set forth specific facts, by way of deposition, affidavit or otherwise, showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

■ Title VII prohibits an employer from, among other things, "fail[ing] or refus[ing] to hire or ... discharg[ing] any individual, or otherwise ... discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Title VII has been amended by the Pregnancy Discrimination Act to clarify that the prohibition against discrimination on the basis of sex extends to discrimination on account of pregnancy: "Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

■ The EEOC may prove employment discrimination under Title VII by one of two methods. *Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir.1988). It may try to meet its burden "head on" by presenting direct evidence that pregnancy or sex was the determining factor in the employment decision. *Id.* In order to satisfy its burden of proof under the direct method, the plaintiff's evidence of discriminatory intent must "relate to the specific employment decision in question." *Randle v. LaSalle Telecommunications*, 876 F.2d 563, 569 (7th Cir.1989) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250–51, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989)). Alternatively, the plaintiff may utilize the indirect, burden shifting method of proof originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and reiterated in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ Under the burden-shifting method, the Title VII plaintiff first establishes a prima facie case of discrimination. The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision. Plaintiff must then show that defendant's reason is merely pretext. To establish pretext, the plaintiff must demonstrate by a preponderance of the evidence either "(1) that the employer was more likely motivated by a discriminatory reason, or (2) that the employer's proffered reason is unworthy of credence." *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 336 (7th Cir.1991).

■ Thus, under the burden-shifting method of indirect proof, plaintiff need not present any direct evidence of discrimination. *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 372 (7th Cir.1992). Rather, a plaintiff may prove its case " 'by eliminating all lawful motivations, instead of proving directly an unlawful motivation.' " *Oxman*, 846 F.2d at 453 (citation omitted). As the Supreme Court has noted, "there may be some cases where the plaintiff's initial [prima facie] evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1095. However, an "honest explanation of unequal treatment is not pretextual simply because it is poorly founded or unfair." *Reed v. Amax Coal Co.*, 971 F.2d 1295, 1300 (7th Cir.1992). The court does not "sit as a super-personnel department that reexamines an entity's business decisions." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987).

■ The requirements for a prima facie case of discrimination under the burden-shifting method of indirect proof necessarily will vary depending on the different factual situations. *Strumph v. Thomas & Skinner*, 770 F.2d 93, 96 (7th Cir.1985) (citing *McDonnell Douglas*, 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 1824 n. 13, 36 L.Ed.2d 668). The claim in this case is somewhat analogous to a claim of discriminatory hiring: after Widmont was laid off pursuant to a reduction in force, she wished to be hired for other positions in her

department. Generally speaking, a prima facie case of discriminatory hiring requires plaintiff to show that (1) the prospective employee belongs to the protected class, (2) she applied and was qualified for a job for which the employer was seeking applicants, (3) despite her qualifications, she was not offered the position, and (4) the employer hired someone else with the same qualifications, but not a member of the protected class, to fill the position. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. However, if the EEOC can prove that the employer in this case had a policy of *offering* employees whose positions had been eliminated any open position for which they possessed the *minimum* qualifications, it will not be necessary for the EEOC to show that the complainant submitted a formal application for the disputed position or that the employer hired someone of similar or lesser qualifications. Rather, in order to make out a prima facie case, it will be enough for the EEOC to show that this policy existed but was not followed in plaintiff's case.

The EEOC argues that it should prevail under either of the two methods of proving discrimination described by the Seventh Circuit in *Oxman.* The EEOC maintains that it has set forth sufficient direct evidence of defendant's discriminatory intent to meet "head on" its burden of directly proving that Widmont's recent pregnancy was the determining factor in defendant's decision not to offer her the disputed positions. The difficulty inherent in this method lies in linking the evidence of general discriminatory intent to the particular employment decisions at issue. *See Randle,* 876 F.2d at 569. Alternatively, the EEOC argues that its evidence indirectly proves discrimination by first establishing a prima facie case and then showing that Northwestern's proffered explanations for the hiring decisions are more likely than not a mere cover-up for discrimination. Without determining which method ought to be used in this case, we examine the evidence under both methods.

▮ Before reaching the central issue of whether defendant intended to discriminate, we must examine several preliminary issues fundamental to the premise of plaintiff's

claim. We must first consider the evidence concerning Northwestern's policy regarding finding alternative employment for eliminated employees. The existence and practice of such a policy will determine what the plaintiff needs to prove in order to make out its prima facie case. As discussed above, if the EEOC can prove that Northwestern had a policy of affirmatively offering eliminated employees any available position for which they were minimally qualified, regardless of whether they submitted a formal application for the position and regardless of whether there were more qualified applicants, then there will be no need for the EEOC to show that Widmont applied for the disputed jobs or that she was as qualified as those persons ultimately awarded the positions. *See supra* p. 764.

The policy upon which plaintiff bases its argument is described in Northwestern's "Absence Without Pay" policy statement, and explained by John Kirk, Northwestern's Director of Labor Relations. Appendix to Plaintiff's Statement of Material Facts, Exhibit 10, Deposition of John Kirk and Attachment. The policy states: "Whenever possible an employee who returns from a Leave will be reinstated in his/her former position. However, ... job reinstatement is not guaranteed. An employee who has been replaced while on Leave will be given preference for other equivalent positions for which he/she qualifies." *Id.* According to Kirk, this policy applied to eliminated as well as replaced employees and entailed *offering* the person any available position for which she possessed the *minimum* qualifications even if someone else were more qualified. Defendant disputes this interpretation of its policy, and further argues that, even assuming this interpretation of the written policy were correct, there is no evidence that the policy was actually followed in practice.

▮ The existence and practice of such a policy bears directly on defendant's obligations towards the complainant under Title VII. If the policy existed and was generally practiced, then Northwestern would have been required to apply it equally across the board to men and women, pregnant and non-pregnant employees alike. If for discrimina-

tory reasons Northwestern did not follow the policy in complainant's case, plaintiff will succeed in its Title VII claim. However, if such a policy was not practiced, then Northwestern would have had no obligation to offer a new mother such as Widmont a job over others who were more qualified. Instead, defendant would have been obligated only to treat Widmont the same as any other applicant. The Pregnancy Discrimination Act does not, after all, require employers to give preferential treatment to pregnant women. *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 738 (7th Cir.1994). Thus, the dispute regarding Northwestern's policy towards eliminated employees is one of material fact.

■ However, even in the absence of a preferential treatment policy, Northwestern would not prevail on its summary judgment motion. Plaintiff's evidence is sufficient to support the elements of the standard prima facie case, as set forth in *McDonnell Douglas, supra* p. 764, regardless of any such policy. In particular, plaintiff offers evidence that the positions were available, that the complainant applied, and that she might have been at least as qualified as the applicants ultimately selected, thus disputing defendant's assertions to the contrary.

First, we examine whether the positions for which plaintiff wished to be hired were actually available at the relevant time. Defendant maintains that neither the assistant director position nor the respiratory specialist position were available when Widmont was seeking alternative employment. Defendant claims that the creation of the assistant director position did not really open up a new position, but merely permitted a change in title and salary for the person already performing the functions of an assistant director. The EEOC disputes this by presenting evidence that the person who was named assistant director shifted some of his former duties to someone else and acquired many entirely new responsibilities upon assuming the new title. As regards the respiratory specialist position, defendant maintains that this position was not officially created until after Widmont accepted severance. The EEOC disputes this by presenting evidence that although the position was not formally

approved until after Widmont's termination, her supervisor, Peterson, was aware of the position's imminent creation well before that time. For example, there is evidence that Peterson planned to fund the position with money made available by the elimination of Widmont's position. Additionally, another employee testified that Peterson had been aware of the need for the position and had been working to create it for quite awhile. Furthermore, there is some suggestion that Peterson purposefully rushed Widmont to make a decision regarding severance in order to avoid offering her this soon-to-be-created position. Thus, we conclude that plaintiff has presented sufficient evidence to create a genuine dispute of material fact regarding the availability of these two positions.

■ We next consider the application requirement. It is true that Widmont did not submit formal applications for the positions. However, when she learned that her job had been eliminated, she informed her supervisor, John Peterson, the Director of the Respiratory Care Department, that she "really needed a job" and would be interested in "anything." Appendix to Plaintiff's Statement of Material Facts, Exhibit 1, Deposition of Janet Widmont ("Widmont Deposition") at 189. She also contacted John Kirk, Director of Labor Relations, and expressed interest in one of the positions. Widmont Deposition at 210. Her efforts were not encouraged by Kirk and were actively discouraged by Peterson, suggesting that formal application would be futile. Widmont Deposition at 189–90, 209–10. Additionally, we note that the application requirement for a prima facie case sometimes may be relaxed, depending on circumstances such as the particular method the employer uses for awarding promotions or filling an opening, *Box v. A & P Tea Co.*, 772 F.2d 1372, 1376–77 (7th Cir.1985), and the relationship between the employer and the particular employee. Under the circumstances of this case, we believe there is sufficient evidence for the trier of fact to conclude that Widmont's expressions of interest in the positions amounted to de facto applications.

As concerns Widmont's qualifications, the EEOC has submitted substantial evidence regarding the extent of her training and

experience, and the connection between that experience and the responsibilities of the three disputed positions. To a great degree, the job descriptions closely parallel the qualifications on Widmont's resume. Several of defendant's own witnesses acknowledge her qualifications. Indeed, at one point prior to her pregnancy, Peterson discussed with Widmont the possibility of Widmont serving in a position which would be the equivalent of an assistant director, implying that Peterson considered her a top candidate for this type of position. Widmont Deposition at 162–63, 351–52. Following the elimination of her position, Peterson also suggested that she apply for a position as a director at another hospital, again implying that she was qualified for a high level management position. Widmont Deposition at 195. Thus the EEOC's evidence is sufficient for the trier of fact to conclude that Widmont may have been at least equally qualified to those ultimately awarded the positions. We note, however, that it is difficult to reach any definitive conclusion regarding relative qualifications because the defendant does not present much evidence regarding the qualifications of the people whom it selected. Rather, defendant devotes the bulk of its efforts to challenging Widmont's qualifications.

Thus far we have determined that there is sufficient evidence for the trier of fact to conclude that (1) Northwestern had a preferential policy of offering eliminated employees any available positions for which they qualified, (2) the disputed positions were available, and (3) Widmont expressed interest in and qualified for the positions. Thus, the EEOC's prima facie case is sufficient to go to the trier of fact.

■ Now we proceed, finally, to examine the evidence of defendant's discriminatory motive. This evidence will be relevant to the EEOC's efforts to prove discrimination either directly, or indirectly under *McDonnell Douglas* by rebutting the non-discriminatory explanations proffered by Northwestern. At the outset, we note the Seventh Circuit's warning that summary judgment is "notoriously inappropriate" where a party's intent is at issue. *Strumph,* 770 F.2d at 97 (citing

*Pfizer v. Internat'l Rectifier Corp.,* 538 F.2d 180, 185 (8th Cir.1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977)). Thus, the summary judgment standard must be applied with "added rigor in employment discrimination cases, where intent is inevitably the central issue." *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d at 370–71 (7th Cir.1992).

As evidence of defendant's discriminatory motive, plaintiff points to testimony by Widmont and another employee in the Respiratory Care Department regarding Peterson's long history of discriminatory behavior towards pregnant women and new mothers. For example, during a prior reorganization of the department, Peterson suggested to Widmont that he might eliminate the position of Joan Heinz, a staff therapist who was then on leave from work due to pregnancy, because Heinz was " 'already out.' " Widmont Deposition at 178–81. Rozlyn Caruso, another employee in Peterson's department, testified that Peterson had commented on at least one occasion that women with babies should stay at home and that he did not understand why they would not want to do so. Appendix to Plaintiff's Statement of Material Facts, Exhibit 9, Deposition of Rozlyn Caruso ("Caruso Deposition") at 66, 88, and Attachment. Caruso further testified that Peterson actually told her that her job would be eliminated when she had a baby and that she would be more "comfortable" at home with the child. Caruso Deposition, Attachment. During her pregnancy, Peterson made derogatory, sexist remarks to Caruso, such as " 'Joe [her husband] must love your big bazooms.' " Caruso Deposition, Attachment. At a Christmas party, Peterson informed Widmont that his wife was " 'at home with the child on her boob where she is supposed to be.' " Widmont Deposition at 179.

Defendant argues that this evidence of Peterson's discriminatory attitude is not admissible. It is true that "remarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 250–51, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989). However, "stereotyped remarks can certainly

be *evidence* that gender played a part." *Id.* (emphasis in original). Moreover, as the Seventh Circuit recently observed, "[d]ifferent kinds and combinations of evidence can create a triable issue of intentional discrimination," including circumstantial evidence such as "behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Troupe,* 20 F.3d at 736. Defendant contends that the evidence should be excluded because the comments were not relevant to the employment decisions at issue. In support of this position, defendant cites the Seventh Circuit's decision in *Monaco v. Fuddruckers, Inc.,* 1 F.3d 658 (7th Cir.1993), in which the court found that the plaintiff failed to show a sufficient causal relationship between the discriminatory remarks of another employee and the employer's decision not to promote the plaintiff. However, in *Monaco,* the discriminatory comments were made by someone who lacked the authority to promote plaintiff. *Id.* at 659. The situation in the present case is entirely distinguishable in that the comments were made by the decision-maker himself.[1]

It may be difficult, however, to show a direct connection between Peterson's remarks and the employment decisions concerning Widmont, and thus, the EEOC may not be able to win its case using the direct method of proof. *See Randle,* 876 F.2d at 569 (citing with approval the lower court's holding that under the direct method, a plaintiff's evidence "must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question"). Nevertheless, even if the EEOC cannot prevail on direct proof, it may succeed using the indirect *McDonnell Douglas* method: the evidence of the employer's discriminatory attitude is sufficient for a reasonable trier of fact to infer that defendant's stated reasons for its decisions were mere pretext for discrimination.

 The defendant argues that despite the evidence of discriminatory motive, plaintiff cannot survive a summary judgment motion because plaintiff has failed to present evidence that employees not in the protected class, but similarly situated to Widmont, received better treatment. Defendant contends that plaintiff must show that non-pregnant employees whose positions had been eliminated while they were on leave were treated more favorably. Defendant is correct that such evidence would be one way of proving discrimination. However, as the Seventh Circuit discussed in *Troupe,* there are other acceptable types of evidence, including discriminatory comments and behavior and "other bits and pieces from which an inference of discriminatory intent might be drawn," as discussed above, and evidence that defendant's stated reasons for the treatment received by complainant are "unworthy of belief, a mere pretext for discrimination." 20 F.3d at 736. Moreover, "[e]ach type of evidence is sufficient by itself." *Id.* Thus, a failure to provide comparative evidence is not fatal.

Applying the rigorous summary judgment standard proposed by the Seventh Circuit in *McCoy,* 957 F.2d at 370–71, we conclude that the EEOC has provided enough evidence to create a genuine issue of material fact as to whether Northwestern's stated reasons for its decisions are pretext designed to conceal an underlying discriminatory motive. However, the EEOC's evidence is not sufficient to place the matter beyond dispute, especially in light of defendant's denials and alternative interpretations regarding some of Peterson's remarks and behavior. Thus, neither party is entitled to summary judgment regarding the claim of discrimination in the decision not to offer Widmont any of the three positions.

### II. The Failure to Mitigate Defense

 Assuming *arguendo* that plaintiff will be able to prove discrimination, defendant argues that Widmont is not entitled to damages due to her failure to mitigate. "The

---

1. Defendant attempts to minimize the effect of the evidence of Peterson's discriminatory attitude by claiming that several people in addition to Peterson had a hand in the decisions regarding Widmont. However, the EEOC has presented sufficient evidence that Peterson, as Widmont's supervisor and Director of the Respiratory Care Department, was in fact the primary decision-maker.

principle of mitigation of damages ... requires that a person to whom a wrong has been done take reasonable steps to minimize the harm, on pain of having his award of damages cut down if he does not." *Hunter v. Allis–Chalmers Corp., Engine Div.*, 797 F.2d 1417, 1427 (7th Cir.1986). The duty of a Title VII plaintiff to mitigate has been codified at 42 U.S.C. § 2000e–5(g)(1): "Interim earnings or amounts earnable with reasonable diligence by the person ... discriminated against shall operate to reduce the back pay otherwise allowable." The defendant employer bears the burden of proving a failure to mitigate. *E.E.O.C. v. Gurnee Inn. Corp.*, 914 F.2d 815, 818 (7th Cir.1990). In order to succeed on a failure to mitigate defense, Northwestern must show both (1) that Widmont was not reasonably diligent in seeking other employment, and (2) that with the exercise of reasonable diligence there was a reasonable chance that she might have found comparable employment. *Id.*

■ However, defendant has cited little evidence regarding lack of diligence or the availability of comparable jobs. Widmont testified that following her termination, she contacted and sought employment at numerous other hospitals. A complainant satisfies the mitigation requirement by "demonstrating a continuing commitment to be a member of the work force." *Donnelly v. Yellow Freight System*, 874 F.2d 402, 411 (7th Cir. 1989), *aff'd on other grounds*, 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990). Part-time work may satisfy the duty to mitigate. *Id.* The fact that Widmont secured work on an "as needed" basis from one hospital roughly three months after her termination from Northwestern, and that she ultimately obtained a full-time position at another hospital less than two years later, is itself testimony to her continued diligence.

■ The thrust of Northwestern's failure to mitigate argument is based on the fact that Widmont opted to take the severance package rather than remain at Northwestern in a Grade 8 Respiratory Therapist position. Defendant complains that she earned lower wages in the two positions she obtained after leaving Northwestern and did not work full-time at first, thereby breaching her duty to mitigate. As a preliminary matter, we note that the EEOC has presented evidence to dispute defendant's contention that it genuinely offered Widmont a position as a respiratory therapist. Widmont testified that Peterson, who would be supervising her in the position, actually attempted to discourage her from accepting it. Furthermore, the duty to mitigate did not require Widmont to accept a demotion from the Grade 11 Coordinator position to a Grade 8 Respiratory Therapist position, a position in which she would be reporting to the very employees she formerly supervised and which she had held when she first started with Northwestern nearly nine years earlier. *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231, 102 S.Ct. 3057, 3065, 73 L.Ed.2d 721 (1982).

The issue of damages and mitigation is further complicated by plaintiff's inability to continue working in a patient care position due to her disabling skin condition. Widmont maintains that the skin condition was caused by the soap provided by one of her new employers. As a consequence of the skin condition, Widmont can no longer wash her hands with the frequency required to provide "hands on" respiratory care to patients. Widmont has not worked, nor has she sought employment, since June 1992.

■ Defendant contends that Widmont's failure to seek alternative employment outside of patient respiratory care is itself a failure to mitigate. As a result, defendant maintains, Widmont should be denied backpay for the period after June 1992.[2]

2. Northwestern might also argue that Widmont is only entitled to backpay up until such time as her disability rendered her unable to work in patient respiratory care. Given the "make whole" purpose of Title VII's backpay remedy, courts should only award backpay for periods during which it can be assumed without considerable speculation that a plaintiff would have held the job on which she predicates her backpay claim. A plaintiff is only entitled to that remedy which would put her in the position she would have been in but for the unlawful discrimination. *See, e.g., Welch v. University of Texas and Its Marine Science Institute*, 659 F.2d 531, 535 (5th Cir.1981) (because it was speculative whether plaintiff, an unlawfully discharged research assistant working under a grant, would have received second grant after termination of initial grant,

In response, the EEOC argues that the skin condition barring Widmont from patient care would never have developed in the first place had she not been forced to leave Northwestern. Plaintiff cites some cases from other circuits which suggest that it would be inappropriate to deny backpay where the employer's discrimination forced the employee into a position that resulted in a disabling injury. *See, e.g., Grundman v. Trans World Airlines,* 54 F.E.P. 224, 1990 WL 165756 (S.D.N.Y.1990); *Whatley v. Skaggs Companies,* 508 F.Supp. 302, 304 n. 1 (D.Co.1981), *aff'd and modified on other grounds,* 707 F.2d 1129 (10th Cir.), *cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 314 (1983). However, in the present case, the complainant was not totally disabled; her skin condition prevented her only from performing "hands-on" patient care. Indeed, by requesting in its complaint that Northwestern be ordered to reemploy Widmont, plaintiff concedes that she is able to work in some capacity in the health care field. Thus, Widmont's failure to look for alternative employment outside of direct patient care may constitute a partial breach of her duty to exercise reasonable diligence to seek other employment. However, Northwestern has presented no evidence regarding the availability of suitable employment opportunities for someone with both Widmont's qualifications and her disability. Thus, we cannot say that as a matter of law, Widmont breached her duty to mitigate, and we deny defendant's motion for summary judgment on this issue.

## CONCLUSION

Because plaintiff concedes that it can make no claim of unlawful discrimination in the elimination of Widmont's position, defendant's motion is granted as regards this type of claim. However, regarding plaintiff's claim of discrimination in the decision not to offer Widmont alternative employment, the record is rife with genuinely disputed issues

defendant's backpay liability ceased on date initial grant terminated). *See also Waters v. Wisconsin Steel Works,* 502 F.2d 1309, 1321–22 (7th Cir.1974), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976) ("Recompense for economic loss resulting from ... discriminatory practices does not require that we entertain claims of ... a speculative and remote nature").

of material fact. Thus, both motions for summary judgment are denied as to this claim. Defendant's motion for summary judgment on the issue of failure to mitigate is also denied.

Thus, arguably, Widmont would not be entitled to backpay for the period of disability during which she could not have held the job on which she predicates her backpay claim. However, Northwestern has not explicitly made this argument; it mentions Widmont's disability only insofar as it pertains to her duty to mitigate.