Susan M. TODD, Plaintiff,

v.

INN DEVELOPMENT AND MANAGEMENT, INC. d/b/a Myrtle Beach Hilton and Motel Equity Venture Limited Partnership, Defendants.

Civ.A. No. 4:92–2534–22.

United States District Court,
D. South Carolina,
Florence Division.

Dec. 2, 1994.

Randall Kelly Mullins, North Myrtle Beach, for plaintiff.

Franklin G. Shuler, Jr., Arthur E. Justice, Florence, for defendants.

## ORDER

CURRIE, District Judge.

This action arises out of the termination of Plaintiff resulting from the elimination of Plaintiff's job as Assistant Food & Beverage Director and Director of Restaurants at the Myrtle Beach Hilton ("Hotel").[1] Plaintiff alleges that she was terminated because of her sex and pregnancy in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). This matter is before the court on the motion of Defendants for summary judgment. The court has carefully reviewed the entire record in this matter and heard oral argument of counsel. For the reasons discussed below, the court grants Defendants' motion.

## I. FACTUAL BACKGROUND

The following factual background is based on the current record before the court for purposes of summary judgment drawing all permissible inferences from the record in the light most favorable to Plaintiff.

Plaintiff was initially hired as a cocktail waitress at the Hotel in the summer of 1976. Plaintiff was employed at the Hotel until April 15, 1991, when she was informed that her job had been eliminated for economic reasons and that Defendants no longer needed her services. At the time she was terminated, Plaintiff held the title of Assistant Food & Beverage Director and Director of Restaurants. In her position, Plaintiff reported to Jim Ruedinger, Food and Beverage Director at the Myrtle Beach Hilton. Mr. Ruedinger was responsible for all food and beverage operations at the Hotel, including the restaurants, the bars, the pool, the golf course, and catering. Mr. Ruedinger reported to the General Manager of the Hotel, Syed Abbas.

Plaintiff's duties included numerous tasks. Plaintiff was involved in the "back-end" responsibilities of computing payroll and overtime. She also performed all the secretarial work of the Food and Beverage Department. Plaintiff's "front-end" duties included the managerial responsibility of Alfredo's restaurant and Another World bar. She also was responsible for the operation of the coffee shop, the veranda bar, and the golf course. Plaintiff was one of three salaried employees of the 150 employees in the Food and Beverage Department. At the time of her termination, Plaintiff's annual salary was $26,442 with four weeks of paid vacation.

In the beginning of 1991, Mr. Ruedinger and Syed Abbas met to discuss how to make the Food and Beverage Department more profitable. At this meeting, they discussed eliminating salary management positions. Mr. Ruedinger recommended eliminating the position of Assistant Food and Beverage Director in order to reduce the payroll. As part of this plan, the Hotel would rely more on the managers of the individual operations and Mr. Ruedinger would assume the "back-end" tasks of doing the scheduling and the payroll.

On March 31, 1991, Plaintiff told Mr.

---

1. At the time of the alleged discrimination, Defendant Motel Equity Venture Limited Partnership owned the hotel and Defendant Inn Development and Management, Inc. managed the hotel.

Ruedinger that she was pregnant.[2] Plaintiff admits that she and Mr. Ruedinger worked very well together up to that point, but that his attitude toward her changed when she told him about her pregnancy.[3]

On April 15, 1994, the date of Plaintiff's termination, Plaintiff met Ron Spiegel in the main kitchen of the Hotel. He introduced himself as the new manager of Alfredo's and Another World. Mr. Spiegel was hired to serve as manager for the Comedy Zone nightclub for three nights a week and Assistant Manager of Alfredo's for two nights a week. Mr. Spiegel was paid $7.00 an hour and received one week paid vacation after a year.

After meeting Mr. Spiegel, Plaintiff sought out Mr. Ruedinger. When she found him in the personnel office, he told her they would talk later. Plaintiff returned to her office and did some paperwork. Later, Mr. Ruedinger requested that Plaintiff return to the personnel office. At the meeting with Mr. Ruedinger was Connie Clifton, Personnel Director at the Hotel. Plaintiff was informed that her job and salary were eliminated because of economic reasons. Mr. Ruedinger assured Plaintiff that she had done a wonderful job and that no one could do her job better. While picking up her last paycheck from Ms. Clifton several days later, Plaintiff discussed the possibility of working a different job. Ms. Clifton said she thought it would be too demeaning to offer Plaintiff a lower job. Plaintiff never spoke with Mr. Ruedinger about the possibility of working a different job.

After Plaintiff was terminated, Ron Spiegel supervised the Comedy Zone and substituted as manager at Alfredo's twice a week. The managers of the individual Food and Beverage outlets assumed more responsibility for their operations. After Plaintiff's ter-

mination, managers at the individual Food and Beverage operations made between $6 and $7 an hour. Fourteen months after Plaintiff's termination, Deborah Lunsford was hired to work as Restaurant Manager at the Hotel. Ms. Lunsford was responsible for the management of all the restaurants at the hotel, but not all the Food and Beverage outlets. Her salary at the Hotel was $19,000.00.

## III. SUMMARY JUDGMENT STANDARD

In deciding a summary judgment motion, the court must look beyond the pleadings and determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If Defendants carry the burden of showing there is an absence of evidence to support a claim, then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. An issue of fact concerns "material" facts only if establishment of the fact might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of Plaintiff's case neces-

2. Mr. Ruedinger claims that he never knew of Plaintiff's pregnancy until after Plaintiff was terminated. For purposes of this motion, however, the court assumes that Mr. Ruedinger knew Plaintiff was pregnant at the time she was terminated.

3. This was the second time Plaintiff was pregnant while working at the Hotel. In the summer of 1988, Plaintiff took medical leave from her job as Beverage Director at the Hotel for the birth of

her first child. She was one of nineteen other female employees at the Hotel who worked while pregnant or took leave and returned to work after their pregnancy. Upon her return, Plaintiff was promoted to the position of Assistant Food and Beverage Director and received a $5000.00 raise. The Food and Beverage Director during Plaintiff's first pregnancy, however, was not Mr. Ruedinger.

sarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. Moreover, production of a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251, 106 S.Ct. at 2511–12.

In other words, summary judgment should be granted in those cases in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trustees*, 955 F.2d 924, 928 (4th Cir.1992); *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979). In making its determination under this standard, this court must draw all permissible inferences from the underlying facts in the light most favorable to Plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); *McKinney*, 955 F.2d at 928.

With these standards in mind, the court now focuses its attention on whether summary judgment is appropriate for Plaintiff's cause of action for employment discrimination.

## IV. DISCUSSION: TITLE VII DISCRIMINATION

Title VII prohibits an employer from, among other things, "fail[ing] or refus[ing] to hire or ... discharg[ing] any individual, or otherwise ... discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII has been amended by the Pregnancy Discrimination Act to clarify that the prohibition against discrimination on the basis of sex extends to discrimination on account of pregnancy: "Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

The Supreme Court has established a now-familiar scheme for resolving employment discrimination cases under Title VII. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Center v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In the first stage of this burden-shifting scheme, Plaintiff must prove, by a preponderance of the evidence, a prima facie case of discrimination. Upon proof of a prima facie case, a rebuttable presumption that Defendants unlawfully discriminated against Plaintiff arises, *Burdine*, 450 U.S. at 252–54, 101 S.Ct. at 1093–94, and the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 253, 101 S.Ct. at 1093–94. Should Defendants carry this burden, the prima facie case is rebutted, and the burden shifts to Plaintiff, who then must come forward with evidence sufficient to support a finding "that the proffered reason was not the true reason for the employment decision" and that she "has been the victim of intentional discrimination." *St. Mary's Honor Center v. Hicks*, —— U.S. at ——, ——, 113 S.Ct. at 2747, 2748 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). As a result of the Supreme Court's decision in *St. Mary's*, Plaintiff must point to evidence sufficient to establish discrimination and may no longer prevail solely by casting doubt on the credibility of Defendants' proffered reasons for their action. *See St. Mary's Honor Center*, —— U.S. at ——, 113 S.Ct. at 2751 ("Nothing in the law would permit us to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation was not believable."); *see also EEOC v. MCI Int'l, Inc.*, 829 F.Supp. 1438, 1450 (D.N.J. 1993).

Summary judgment in favor of a Title VII defendant may be appropriate at either the first or third stages of the analysis if Plaintiff fails to offer sufficient evidence to meet her burdens. *Ballinger v. North Carolina Agric. Extension Serv.*, 815 F.2d 1001, 1005–06 (4th

Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987) (failure to establish prima facie case); *Int'l Woodworkers of America v. Chesapeake Bay Plywood Corp.,* 659 F.2d 1259, 1271 (4th Cir.1981) (failure to produce evidence countering employer's articulated legitimate reason for disparate treatment). Whether a case is set for jury trial or, as in this instance, scheduled for bench trial, however, "at the summary judgment stage the judge's function is not [her-]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The dispute over the basis upon which Plaintiff contends that she is entitled to trial need not be resolved conclusively in her favor; "rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz. v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968).

■ Plaintiff attempts to establish a prima facie case of discrimination by meeting the four-part test first articulated in *McDonnell Douglas Corp.* This test, modified for pregnancy discrimination, requires Plaintiff to show: (1) Plaintiff is a member of a protected class; (2) Plaintiff was qualified for the job from which she was discharged; (3) Plaintiff was discharged; (4) Employer filled her position with a non-pregnant person. *See LaFleur v. Westridge Consultants,* 844 F.Supp. 318, 324 (E.D.Tex.1994); *EEOC v. Northwestern Memorial Hospital,* 858 F.Supp. 759, 764 (N.D.Ill.1994).[4]

Plaintiff clearly meets the first three requirements. First, she was pregnant at the time of the termination. Second, Defendants agree that Plaintiff was qualified and performed her job in a satisfactory manner. Third, Plaintiff was terminated.

■ Plaintiff, however, fails to meet the final part of the *McDonnell Douglas Corp.* test. It is clear from the evidence of record that Plaintiff's job was eliminated. Plaintiff has produced no evidence that her position was ever reestablished. Therefore, Plaintiff cannot meet the fourth part of the *McDonnell Douglas Corp.* test because she was never replaced. Her job duties were assumed by the individual restaurant managers and Mr. Ruedinger. It is clear from the record that no one was hired to assume Plaintiff's job responsibilities. Nor was anyone given a compensation package similar to Plaintiff.

In an attempt to create an issue of fact on this point, Plaintiff points to deposition testimony of Mr. Spiegel in which he states that he was told he would have Plaintiff's job and her responsibilities but could not be given Plaintiff's job title because of potential liability in this action. This testimony does not create an issue of fact for two reasons. First, Mr. Spiegel never worked with Plaintiff and, therefore, does not know what Plaintiff's job entailed. Second, Mr. Spiegel's testimony demonstrates he had neither the same job nor the same responsibilities as Plaintiff. Mr. Spiegel testified that he was paid $7 an hour and had only "front-end" responsibilities, not any "back-end" paperwork responsibilities.

Plaintiff also alleges that Deborah Lunsford was hired to perform the same duties as Plaintiff. This claim also is without merit. Ms. Lunsford was hired fourteen months after Plaintiff's termination. She was hired as Restaurant Manager at the Hotel. Unlike Plaintiff who was responsible for all Food and Beverage operations, Ms. Lunsford was only responsible for the management of the restaurants at the hotel, not all the Food and Beverage outlets. Also, Ms. Lunsford's salary at the Hotel, $19,000.00, was $7500.00 less than Plaintiff.

4. A prima facie case may also be established through the production of direct evidence of discrimination. In this case, there is no direct evidence of discrimination. Plaintiff produced an affidavit from Connie Clifton stating that Mr. Ruedinger had a consistent pattern of firing female employees and replacing them with male employees. This affidavit is conclusory in nature and does not set forth specific facts upon which it is based. Such an affidavit does not meet the requirements of Fed.R.Civ.P. 56(e). More significantly, the affidavit fails to address the issue raised in this action—that Plaintiff was terminated because of her *pregnancy.*

Furthermore, even if Plaintiff met the *McDonnell Douglas Corp.* test, Plaintiff has not come forward with evidence sufficient to support a finding that Defendants' proffered reason was not the true reason for her termination and that she has been the victim of intentional discrimination. Defendants have alleged that Plaintiff was terminated in order to eliminate a middle management position and cut payroll costs. Plaintiff and Mr. Ruedinger had oversight responsibility over all Food and Beverage operations. Each of the Food and Beverage outlets also had a manager. Each of the individual managers made less money and had less responsibility than Plaintiff. By eliminating Plaintiff's position and splitting her responsibility between Mr. Ruedinger and the individual managers, Defendants had a direct savings of $26,442.00 and four weeks of paid vacation. Even if Mr. Spiegel's pay is taken into account, approximately $14,560.00 a year, Defendants would have saved nearly $12,000.00 and three weeks of paid vacation.

■ Plaintiff relies on the testimony of a former employee at the Hotel, Pamela Penny, to infer a pattern of discrimination against pregnancy. Ms. Penny was a full-time bartender at the Hotel in 1991. Ms. Penny took leave when she was pregnant. Ms. Penny alleges that Mr. Ruedinger promised she could have her job back when she returned from her pregnancy. When she returned she was given part-time work. Shortly after her return, Ms. Penny quit.

The record shows, however, that Ms. Penny was treated in accordance with the collective bargaining agreement that governed her employment. This agreement required that employees returning from leave would be returned to their job or a similar job, subject to availability. Ms. Penny admitted that she had to be replaced while she went on leave and that her job was filled when she returned. Ms. Penny was given alternative employment, but she did not like it. Ms. Penny did admit that she never had a problem taking maternity leave. This evidence does not allow the court to infer a pattern of discrimination against pregnancy nor does it show a violation of the Pregnancy Discrimination Act. In fact, the existence of a mater-

nity leave policy further supports Defendants' contention that they did not discriminate based upon pregnancy. *See Troupe v. May Department Stores Co.,* 20 F.3d 734, 738 (7th Cir.1994) (noting that the PDA does not even require employers to offer maternity leave or take steps to make it easier for pregnant women to work).

One additional fact supporting the conclusion that Plaintiff was not terminated because of her pregnancy is the timing of the decision to eliminate her job. It is undisputed that in the beginning of 1991 Mr. Ruedinger and Syed Abbas met to discuss how to make the Food and Beverage Department more profitable. At this meeting, they decided to eliminate the position of Assistant Food and Beverage Director to reduce the payroll. This decision was made before March 31, 1991—the date Plaintiff claims she told Mr. Ruedinger that she was pregnant. Because Mr. Ruedinger did not know Plaintiff was pregnant until after he decided to eliminate her job, no rational trier of fact could infer that she was the victim of pregnancy discrimination.

## V. CONCLUSION

For these reasons, the court orders that summary judgment be granted in favor of Defendants.