**Diane MEYER, Plaintiff,**

v.

**UNITED AIR LINES, INC., Defendant.**

**No. 95 C 2813.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 16, 1997.

---

James P. Gallagher, Martin M. Stack, Nagle & Gallagher, Chicago, IL, for Diane Meyer.

James W. Gladden, Jr., Jeri Anne Lindahl–Garcia, Angela K. Dorn, Mayer, Brown & Platt, Chicago, IL, Mark D. DeBofsky, DeBofsky & DeBofsky, Chicago, IL, · for United Airlines, Inc. and Edward Del Genio.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Diane Meyer, filed suit against the defendant, United Air Lines ("United"), alleging violations of Title VII and the Equal Pay Act. She also claims that she was retaliated against for participating in an internal investigation of her supervisor related to a sexual harassment charge, and, as a result of this retaliation, she was constructively discharged from her position. United has moved for summary judgment on Ms. Meyer's damages claims relating to back pay on the grounds that she failed to mitigate her damages following her resignation. For the following reasons, the motion is granted.

### Background

United hired Ms. Meyer in September, 1989 as an attorney in United's legal department. She worked in the arbitration division of that department where she handled arbitration disputes between United and its flight attendants and pilots unions. At the time of her hiring, Ms. Meyer had practiced law for four years with the Cook County State's Attorney's Office, but she had no relevant experience in labor law or arbitration. Ms. Meyer left United on July 9, 1993. At the time of her departure, Ms. Meyer earned approximately $60,000 annually.

Prior to her departure, Ms. Meyer sought alternative employment. In April, 1993 Ms. Meyer applied for a part-time position with the Cook County State's Attorney's office. She was offered this position in May, 1993 with an immediate start date. Ms. Meyer, however, requested and received a start date in mid–July, 1993. She did not seek any other employment opportunities, full-time or part-time.

Ms. Meyer started her new position on July 12, 1993. In that job, she works three full days per week drafting criminal appellate briefs and doing other related appellate work. Her initial salary at the Cook County State's Attorney's office was $29,428 per year. Ms. Meyer has remained in her position at that office since she started there three and one half years ago.

### Legal Standard of Review

A court may award summary judgment to the moving party only when there is no genuine issue of material fact and that party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). A genuine issue of material fact exists when a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). In considering the motion, all reasonable inferences must be drawn in favor of the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

### Mitigation of Damages

■ A Title VII claimant has a statutory duty to use reasonable and diligent efforts to secure suitable employment in order to mitigate damages. 42 U.S.C. § 2000e–5(g) (1994); *Ford Motor Co. v. EEOC,* 458 U.S. 219, 231, 102 S.Ct. 3057, 3065, 73 L.Ed.2d 721 (1982). Although the plaintiff has this duty, the defendant bears the burden of proving the affirmative defense of failure to mitigate. Specifically, the defendant must prove (1) that the plaintiff did not exercise reasonable diligence in seeking comparable employment; and (2) that comparable employment actually was available had the plaintiff exercised reasonable diligence. *EEOC v. Gurnee Inn Corp.,* 914 F.2d 815, 818 (7th Cir.1990).

■ United has established the first prong of its affirmative defense and proven that Ms. Meyer failed to use reasonable diligence in seeking comparable employment. In order to satisfy the mitigation requirement, Ms. Meyer was not obligated to "go into another line of work, accept a demotion or take a demeaning position ...." *Ford Motor,* 458 U.S. at 232, 102 S.Ct. at 3066.

Ms. Meyer, however, did have an obligation to remain actively in the labor force seeking a substantially equivalent position to the one she left at United. *See Hunter v. Allis–Chalmers Corp.,* 797 F.2d 1417, 1428 (7th Cir.1986); *see also Ford Motor,* 458 U.S. at 232, 102 S.Ct. at 3066 (holding that a Title VII claimant "forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied"). By immediately accepting the part-time position in the Cook County State's Attorney's office, Ms. Meyer did not meet this obligation.

■ Ms. Meyer's present part-time position cannot be considered comparable or substantially equivalent to her prior job at United in any aspect except for the fact that she still practices law. A substantially equivalent position is one which affords "the claimant virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status." *Rasimas v. Michigan Dept. of Mental Health,* 714 F.2d 614, 624 (6th Cir.1983), *quoted in Graefenhain v. Pabst Brewing Co.,* 870 F.2d 1198, 1203 (7th Cir.1989). The amount of hours worked at a new job is also relevant to the determination of whether it qualifies as substantially equivalent employment. *McCann Steel Co. v. NLRB,* 570 F.2d 652, 655 (6th Cir.1978). By working part-time in her current job, Ms. Meyer has cut her salary and hours in half, and, as a result, her prospects for promotion also have dimmed. Therefore, Ms. Meyer's new position is not comparable to her prior position at United. *See Certified Midwest, Inc. v. Local Union No. 738,* 686 F.Supp. 189, 193 (N.D.Ill.1988) (holding that "it is clear ... that two jobs are not comparable when one pays from 2.4 to 2.5 times as much as the other").

■ Nevertheless, a Title VII plaintiff is permitted to take an interim job or even a permanent job which might pay less money or have fewer responsibilities than her prior position but only after the plaintiff has made reasonable and diligent efforts to find comparable employment. *See Ford Motor,* 458 U.S. at 231 n. 14, 232 n. 16, 102 S.Ct. at 3065 n. 14, 3066 n. 16; *Tubari Ltd., Inc. v. NLRB,* 959 F.2d 451, 456–57 (3rd Cir.1992). Yet the

undisputed facts establish that Ms. Meyer accepted the part-time position without conducting any further search for a full-time position. Defendant's 12(M) Statement, ¶¶ 46, 52; Plaintiff's 12(N) Statement, ¶¶ 46, 52. To this day, she has not made any attempts to find a full-time position comparable to the one she held at United. Defendant's 12(M) Statement, ¶ 56; Plaintiff's 12(N) Statement, ¶ 56. Under these circumstances, Ms. Meyer cannot be said to have engaged in reasonable and diligent efforts to secure a comparable position. "[A] discriminatee who immediately accepts a one-third reduction in pay without making any effort to secure alternative suitable interim employment has not exercised reasonable diligence." *Tubari*, 959 F.2d at 459. Ms. Meyer did exactly this except that she reduced her pay by one-half. This action amounts to a willful loss of earnings, thereby reducing the amount of any award that Ms. Meyer might receive. *See Phelps Dodge Corp., v. NLRB*, 313 U.S. 177, 198, 61 S.Ct. 845, 854, 85 L.Ed. 1271 (1941); *see also NLRB v. Madison Courier Inc.*, 472 F.2d 1307, 1321 (D.C.Cir. 1972) (holding that "[i]f the discriminatee accepts significantly lower-paying work too soon after the discrimination in question, he may be subject to a reduction in back pay on the ground that he willfully incurred a loss by accepting an 'unsuitably' low paying position").[1]

The Seventh Circuit and courts in this district have held previously that part-time work satisfies the mitigation requirement. *Donnelly v. Yellow Freight Sys.*, 874 F.2d 402, 411 (7th Cir.1989); *EEOC v. Northwestern Mem'l Hosp.*, 858 F.Supp. 759, 768 (N.D.Ill.1994). In each of these instances, however, the courts have noted that the plaintiffs have continued to search for full-time, comparable employment. *Donnelly*, 874 F.2d at 411; *Northwestern Hosp.*, 858 F.Supp. at 768. The same cannot be said of Ms. Meyer.

Moreover, Ms. Meyer's choice to pursue part-time work was not based upon poor economic conditions or a tight labor market. Rather, Ms. Meyer's decision was based on personal considerations relating to child-care. Defendant's 12(M) Statement, ¶ 47; Plaintiff's 12(N) Statement, ¶ 47. As valid as these concerns may be, they still are " 'personal reasons unrelated to the job.' " *U.S. v. City of Chicago*, 853 F.2d 572, 579 (7th Cir. 1988) (citing *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1278 (4th Cir.1985)). Consequently, Ms. Meyer's personal reasons for seeking only part-time work cannot be used as a justification for her lack of reasonable diligence.

This result squares with the purpose of awarding back pay in Title VII cases. The purpose of back pay is " 'to make the victims of unlawful discrimination whole' by restoring them, 'so far as possible ... to a position where they would have been were it not for the unlawful discrimination.' " *Ford Motor*, 458 U.S. at 230, 102 S.Ct. at 3065 (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975) (citation omitted)). Thus, the employer should not be liable for any damages which are not the result of discrimination but instead may be the result of losses willfully incurred by the plaintiff. *See Phelps Dodge*, 313 U.S. at 198, 61 S.Ct. at 854. In this case, any losses sustained by Ms. Meyer are due to a reduction in earnings from her part-time job which, as described above, is a result of a choice that she made freely. It should not be attributed to the actions of United. The award of back-pay for losses that have no relation to the alleged discrimination she suffered would subvert the reasons supporting this remedy.

■ United has carried the second part of its burden as well. Through a three year survey of the *Chicago Daily Law Bulletin*, United identified hundreds of available legal positions which Ms. Meyer might have se-

---

1. Although *Tubari, Phelps Dodge*, and *Madison Courier* all involved cases based on National Labor Relations Act (NLRA), they may be applied with equal force to a Title VII action. In *Ford Motor*, the Supreme Court explained that 42 U.S.C. § 2000e–5(g) was " 'expressly modeled' " on the analogous remedial provision of the

NLRA. 458 U.S. at 226 n. 8, 102 S.Ct. at 3062 n. 8. As such, the "principles developed under the NLRA generally guide, but do not bind, courts in tailoring remedies under Title VII." *Id.* These principles are an appropriate guide in this case because of the thorough treatment given to this issue by those courts which have addressed it.

cured through the exercise of reasonable diligence. United examined the classified section of the *Chicago Daily Law Bulletin* during the period from March, 1993 until October, 1996. Finkelman Aff. ¶ 2. Its search revealed 566 available jobs in litigation, employment, labor, or criminal law fields which were being offered by corporations, law firms, government agencies, and legal recruiting firms. *Id.* ¶ 4. All of these jobs were in legal fields which fit with Ms. Meyer's previous work, and many of them drew on Ms. Meyer's past years of experience. In this sense, these jobs were comparable to Ms. Meyer's position at United.[2]

### Conclusion

By immediately accepting a part-time, lower-paying position and never seeking a full-time, higher-paying job, Ms. Meyer effectively refused to accept comparable employment for purposes of mitigation. Therefore, she has failed to mitigate her damages resulting from United's alleged discriminatory acts, and United's motion for summary judgment on damages for back pay is granted.

---

**2.** At this juncture, I must address several of Ms. Meyer's arguments. First, Ms. Meyer contends that she couldn't seek comparable work in the labor or employment fields because she feared that United would give her a bad recommendation because it made disparaging comments about her work in response to an EEOC inquiry. Ms. Meyer's fear is rooted in speculation, not in fact. Ms. Meyer never asked for nor received a recommendation from anybody at United. Hence, she has no factual basis for concluding that United would give her a poor recommendation.

Second, Ms. Meyer implied in her brief that only employment as an arbitration attorney for an airline could amount to comparable employment. This implication is not well-taken. In a profession as broad as the law, Ms. Meyer easily could have applied the skills she obtained at United in another employment setting.

Finally, Ms. Meyer claimed that she could not envision another comparable position to the one she left at United. Again, Ms. Meyer's argument is unfounded. The focus of the mitigation inquiry is on what the plaintiff *did* or *did not* do with respect to finding another job, not on what the plaintiff *thought* she might or might not find had she looked for another job.