**Roosevelt WILLIAMS and Roman Candir, Plaintiffs,**

v.

**IMPERIAL EASTMAN ACQUISITION CORP., Defendant.**

**No. 96 C 3859.**

United States District Court, N.D. Illinois, Eastern Division.

Feb. 10, 1998.

Reid Scott Neuman, Gabe & Neuman, P.C., Des Plaines, IL, Lawrence E. Just, Lawrence E. Just & Assoc., Des Plaines, IL, for Plaintiffs.

Rody P. Biggert, David S. Baffa, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

The plaintiffs, Roosevelt Williams and Roman Candir are suing defendant, Imperial Eastman Acquisition Corporation ("Imperial"), for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Mr. Candir also alleges disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Imperial now moves for summary judgment on the merits of the claims, or in the alternative, on the plaintiffs' claims for back pay and/or front pay. For the reasons set forth below, Imperial's motion is granted in part and denied in part.

### *Background*

Mr. Williams and Mr. Candir worked in the quality assurance department of Imperial's Niles facility at the time of their layoffs. They claim that they were laid off because of their age. At the time of the layoff, they were 46 and 56 respectively. In addition, Mr. Candir claims that Imperial laid him off because of his disability: an alleged bad back.

Plaintiffs' last days of work were at the end of March, 1993. From that date, Mr. Williams and Mr. Candir received severance pay until September 29, 1993 and September 26, 1993, respectively.

Imperial manufactures a variety of products, including valves, fittings, and component assemblies for pneumatic and fluid control applications as well as tools to flare and cut pipes or tubes. In January, 1993, Imperial implemented a reorganization and a reduction-in-force plan at its Niles facility. As a result of the reorganization, most positions in the quality assurance department were eliminated.

Seven individuals were originally selected for termination in the quality assurance department: plaintiffs as well as James Sykes (52), Faiz Shakir (47), Walter Kocol (35), Alvin Hoskins (34), and Karen Whalen (32). They were all hourly or salaried, non-exempt employees.[1]

In conjunction with its reorganization effort, Imperial sought to achieve ISO 9000 certification at the Niles facility. The International Organization for Standardization created the ISO 9000 standard as the standard for products traded across international borders. ISO 9000 certification requires exhaustive documentation of manufacturing operations and processes, and intimate knowledge of rigid criteria.

Three employees were hired as part of the reorganization and the ISO 9000 certification. All three were under the age of 40.

### *Summary Judgment*

#### A. *Age Discrimination*

There are two ways to prove age discrimination: through direct proof of discrimination or through the indirect, burden shifting method of proof established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Hartley v. Wisconsin Bell, Inc.,* 124 F.3d 887, 888 (7th Cir.1997). Mr. Williams and Mr. Candir seek to prove age discrimination in this case under the indirect burden-shifting method.

Under the *McDonnell Douglas* approach, Mr. Williams and Mr. Candir must first present a *prima facie* case of discriminatory discharge. *Schultz v. General Elec. Capital*

---

1. The two members of the quality assurance department who were not selected were salaried, exempt engineers: Herb Watson (54) and Rafael Yah (42).

*Corp.*, 37 F.3d 329, 333 (7th Cir.1994). If they succeed in establishing a *prima facie* case, the burden shifts to Imperial to articulate a legitimate non-discriminatory reason for the discharge. *Id.* If Imperial articulates such a reason, the burden shifts back to plaintiffs to prove that Imperial's proffered reason is pretextual. *Id.*

### 1. Prima Facie Case

■ To establish a *prima facie* case under the ADEA, Mr. Williams and Mr. Candir must establish that (1) they were in the protected age group; (2) their job performance was satisfactory; (3) they were discharged; and (4) individuals not in the protected age group were hired for their positions or were treated more favorably. *Darnell v. Target Stores,* 16 F.3d 174, 177 (7th Cir.1994). Neither party contests that the first three criteria have been met; only the fourth criteria is in dispute.

Mr. Williams and Mr. Candir contend that Imperial discharged them and replaced them with younger employees who performed their same job functions. Imperial admits that it did hire three younger employees subsequent to plaintiffs' layoffs, but says that these employees were hired for different, more technical job functions that plaintiffs were not qualified to perform. Viewing the facts in the light most favorable to Mr. Williams and Mr. Candir, they have met their *prima facie* case by showing that three younger employees were hired after they were discharged. *See Schultz,* 37 F.3d at 333.

### 2. Legitimate, Non-discriminatory Reasons for Discharge

■ The burden of production now shifts to Imperial to offer legitimate, non-discriminatory reasons for discharging the plaintiffs. *Id.* Imperial presents sufficient evidence to prove that it terminated Mr. Williams and Mr. Candir pursuant to a legitimate reorganization and reduction-in-force plan. Jack Deets, Director of Quality Assurance for Imperial, stated in his sworn affidavit that he had personal knowledge that Imperial (1)

outsourced much of its assembly operations, thus eliminating the need for assembly and receiving inspectors; (2) changed from an after-the-fact inspection system to an in-process assurance system, which placed the burden of quality control primarily on the manufacturing personnel rather than quality control personnel; (3) outsourced most of its gauge calibration work, which eliminated the need for calibration inspectors; and (4) began to require third-party assemblers and suppliers to certify their products for quality, which eliminated the need for receiving inspectors. These changes eliminated the need for quality control inspectors and seven employees (ages 32 to 56), including plaintiffs, were terminated.[2]

Imperial also offers legitimate, non-discriminatory reasons for hiring three younger employees after plaintiffs were laid off. Mr. Deets in his sworn affidavit states that Ron Paidur (age 25) was an engineer hired to perform in-process engineering work. Sam Cebula (35) and Tom Edwards (30) were trained in ISO 9000 certification and were hired to assist in Imperial's certification. This certification requires exhaustive documentation of manufacturing operations and processes and intimate knowledge of rigid criteria.

### 3. Pretext

■ The burden now shifts back to Mr. Williams and Mr. Candir to demonstrate that Imperial's reasons are pretextual. *Schultz,* 37 F.3d at 333. The evidence that plaintiffs offer to prove pretext raises genuine issues of material fact.

Plaintiffs claim that the quality control positions were not eliminated at the Niles plant. The first piece of evidence that they offer is the hiring of Mr. Paidur, Mr. Cebula, and Mr. Edwards, the three younger employees. Plaintiffs claim that those employees were hired to perform plaintiffs' exact same job functions and that their alleged technical expertise was merely a pretext to fire older employees.

---

**2.** Plaintiffs stipulated to the fact that Imperial implemented a reorganization and reduction-in-force at its manufacturing plant in Niles, Illinois and that seven employees, ages 32 to 56, were selected for termination.

To support this claim, Mr. Williams testified that another employee, Alvin Hoskins, told him that these younger employees were performing the exact same functions. In addition, Mr. Candir testified that his brother and Mr. Wally, both employees at the Niles plant, told him that the younger employees were performing the same job functions. But this testimony as to what they were told is inadmissible hearsay and cannot be considered in a summary judgment proceeding. *Russell v. Acme–Evans Co.,* 51 F.3d 64, 68 (7th Cir.1995).

Second, plaintiffs claim that the retention of Mr. Sykes, age 52, to perform gauge calibration work is evidence of pretext. Mr. Candir is only four years older than Mr. Sykes. Furthermore, Mr. Candir was not employed as a gauge calibration worker at the time of his discharge, having been transferred to a different position two years earlier. Mr. Sykes was the employee performing gauge calibration work. Thus, if Imperial needed to rehire a gauge calibrater, the most logical person to rehire was Mr. Sykes.

Third, plaintiffs argue that rehiring Mr. Shakir (age 47) is also evidence of pretext since Mr. Shakir had less seniority than either of the plaintiffs. This argument also lacks merit. Mr. Shakir was not rehired by Imperial until January of 1995, almost two years after the initial decision to reduce the workforce. In addition, he was rehired pursuant to a settlement agreement between Imperial and Mr. Shakir, who was represented by plaintiffs' current counsel.

Fourth, Mr. Candir alleges that his manager, Herb Watson, and the head of the quality assurance department, Jack Deets, made age-related remarks. Herb Watson said "too bad I have to layoff another inspector and an old timer." Candir Dep. at 115. Jack Deets told him that he was an "old timer." Candir. Dep. at 80. However, neither of these comments are sufficient to prove that the decision to terminate the plaintiffs was based on age.

However, what saves the age discrimination claims for the plaintiffs are statements made by managers, in departments outside of the quality assurance department, that they were being fired because of their old age. These statements are admissible under Federal Rule of Evidence 801(d)(2)(D) as "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."

Mr. Williams alleges that Bill Smith, Walter Vinato, and Sophie Berra told him that Imperial was laying off people based on age. None of these people were managers in the quality assurance department. Mr. Smith said that the company wanted "to eliminate the high salary and the vacation and the old timers and hire younger people in their place." Williams Dep. at 110. Mr. Vinato said that the company "was trying to eliminate the old time with a lot of seniority and vacations and hire younger peoples in with no seniority and no vacation and make the company easier to sell." Williams Dep. at 114. Ms. Berra said that the company "wanted to hire young people so they could get rid of the old—the high payroll and the seniority and vacations."

Similarly, Mr. Candir alleges that Mr. Smith said "he want prepare me the time come you better look for a new job ... the leakage come out and they talk lots on the floor, the inspection department got to go first after another old timer manager go out because they wanted—the company wanted a place for younger people." Candir Dep. at 114. In addition, Walter Fernandez, a manager of the screw machine department, said that he heard in a manager meeting that "we got to lose job because of old age." Candir Dep. at 111–12. Together, these statements create a genuine issue of material fact as to whether or not Imperial's reason was pretext for age discrimination.

## B. Disability Discrimination

■ "The ADA prohibits an employer from discriminating against 'a qualified individual with a disability because of the disability of such individual ....'" *Leffel v. Valley Financial Services,* 113 F.3d 787, 792 (7th Cir.1997) (quoting 42 U.S.C. § 12112). To be covered by the ADA, a plaintiff must first prove that he has a disability. *See Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d

560, 563 (7th Cir.1996). A person is disabled who either (1) has an impairment that substantially limits one or more of his major life activities or (2) has a record of such impairment or (3) is perceived as having such an impairment. *Leffel*, 113 F.3d at 792 (citing 42 U.S.C. § 12102(2)). "The determination as to whether an individual is [disabled] must be made as of the time of the employment decision." *Bombard*, 92 F.3d at 563.

■ Mr. Candir cannot prove that he is disabled within the meaning of the ADA. First, he cannot show that his back injury substantially limited any of his major life activities. Those activities include "functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Roth v. Lutheran General Hosp.*, 57 F.3d 1446, 1454 (7th Cir.1995) (citing 29 C.F.R. §§ 1613.702(c), 1630.2(i)). Mr. Candir worked full-time, without any restrictions on his duties, until he was terminated.

Second, Mr. Candir cannot show a record of back pain. Although Mr. Candir did have back surgery in 1983, he stipulated that in the ten years prior to his discharge, he did not seek any medical treatment for his back from his back surgeon, Dr. Spencer. Further, Mr. Candir stipulated that his family doctor, Dr. Marella, indicated that he had "no complaints" as of July 1992 and that he did not visit the doctor again until March, 1993, after his last day of work.

Finally, Mr. Candir cannot establish that he was perceived as disabled. "A person is 'regarded as having' an impairment that substantially limits the person's major life activities when other people treat that person as having a substantially limiting impairment.... The focus is on the impairment's effect upon the attitudes of others." *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995) (citing *Byrne v. Board of Educ., Sch. of West Allis–West Milwaukee*, 979 F.2d 560, 566 (7th Cir.1992)) (citation omitted).

Mr. Candir cannot point to any evidence that he was treated as disabled or that man-agement viewed him as disabled. The only evidence that Mr. Candir presents is his testimony that he spoke to Mr. Deets about his back problems and that on one occasion Mr. Deets gave him "a bad look" when he asked for assistance in lifting something. But this testimony does not address the effect of Mr. Candir's complaints on management's attitudes. At most, it shows that management knew that Mr. Candir complained of back problems, but continued to treat him like all other employees.

### C. Damages [3]

■ Discharged plaintiffs have a duty to exercise reasonable diligence in attempting to mitigate damages by finding comparable work. *Smith v. Great Am. Restaurants, Inc.*, 969 F.2d 430, 438 (7th Cir.1992). Failure to mitigate is an affirmative defense for which the defendant bears the burden of proof. *Meyer v. United Air Lines, Inc.*, 950 F.Supp. 874, 876 (N.D.Ill.1997). Imperial plead the affirmative defense of failure to mitigate in its Answer to Plaintiffs' Complaint.

■ To establish a failure to mitigate, Imperial must prove (1) that plaintiffs did not exercise reasonable diligence in seeking comparable employment and (2) that comparable employment was actually available if plaintiffs had exercised reasonable diligence. *Id.* at 876. It is undisputed that comparable employment was available. A survey of classified ads in the Sunday Chicago Tribune in April, May, and June of 1993 reveal that 118 different positions in quality assurance inspection were available for persons with plaintiffs' qualifications. These positions did not require a degree or ISO 9000 knowledge. Advertisements for 37 of those positions were run for more than one week. Thus, the only question that remains is whether plaintiffs exercised reasonable diligence in finding comparable employment.

■ Mr. Williams made inquiries at two companies, but was advised that those companies were not hiring. He then moved back to his hometown in Mississippi and operated

---

**3.** Imperial's motion for summary judgment on the question of damages is based on three separate grounds: failure to mitigate, judicial estop-pel, and eventual termination. Because I find the first ground dispositive, I only address that issue.

the family cattle farm. He still operates this farm full-time today. The only other attempts he made to find work were in mid–1995, when he sought part-time quality control work.

Mr. Williams was obligated to remain active in the labor force, seeking a substantially equivalent position to the one he held at Imperial. *Id.* Working on a cattle farm is not substantially equivalent to quality control inspection. Mr. Williams could have decided to work permanently on the cattle farm if after a diligent search, he could not find comparable work. *Id.* But, two inquiries does not constitute reasonable diligence. Rather, it illustrates that Mr. Williams made a personal decision to try to run the family cattle farm. Personal decisions cannot be used as a justification for lack of reasonable diligence. *Id.* at 877.

■ Furthermore, although a decision to enter self-employment can satisfy a duty to mitigate, the self-employment must be a "reasonable alternative to finding other comparable work." *Smith,* 969 F.2d at 438. For example, opening your own restaurant, instead of seeking another management position at a restaurant, is a reasonable alternative. *Id.* However, running a cattle farm is totally unrelated to quality assurance work, drawing on none of the skills of quality assurance. Mr. Williams had no experience in cattle farming, having worked his whole adult life at Imperial. Thus, Mr. Williams' self-employment: cattle farming, is not a reasonable alternative to finding comparable work. Therefore, Mr. Williams is not entitled to damages for back pay or front pay.

■ Similarly, Mr. Candir stated in his Answers to Interrogatories that he made no efforts to find work following his termination. At a later deposition, Mr. Candir changed his answer, claiming that he telephoned a couple of companies and sent letters. He does not recall which companies he contacted nor does he have any record (copies of letters) of the contact.

Even if Mr. Candir did make some contact, it is undisputed that as of December, 1993, he stopped looking for work. Thus, since December, 1993, Mr. Candir has failed to mitigate any damages. Therefore, if Mr. Candir can establish damages, he is only entitled to damages from the date his severance pay ended on September 29, 1993 until December, 1993.

*Conclusion*

For the foregoing reasons, Imperial's motion for summary judgment is granted in part and denied in part. Imperial is entitled to judgment on Mr. Candir's ADA claim and is entitled to judgment on the issue of plaintiffs' claims for back pay and front pay.