**Kenny W. BRICKER, Plaintiff,**

v.

**FEDERAL–MOGUL CORP., Defendant.**

**No. IP 98–396 C B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Nov. 18, 1998.

Kennethy E. Lauter, Haskin Lauter Cohen & Larue, Indianapolis, Indiana, for plaintiff.

Kenneth J. Yerkes, Barnes & Thornburg, Indianapolis, Indiana, for defendant.

## ENTRY GRANTING DEFENDANT'S MOTION TO DISMISS

BARKER, Chief Judge.

This matter comes before the Court on Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Plaintiff claims that Defendant *wrongfully discharged him in retaliation for Plaintiff's refusing to falsify certain maintenance records.* Defendant contends that Plaintiff has not alleged that he falls within one of the narrow exceptions to Indiana's employment-at-will doctrine and thus his claim is not cognizable. For the reasons set forth below, we *grant* Defendant's motion.

## FACTS

Plaintiff, Kenny W. Bricker ("Bricker"), is a resident of West Lafayette, Indiana. *See* Compl. ¶ 4. Defendant, Federal–Mogul Corp. ("Federal–Mogul"), is a Michigan corporation with its principal place of business in Michigan. *See* Notice of Removal ¶ 3. Bricker became employed by Federal–Mogul in or around March 1996 as a Maintenance & Tool Room Supervisor and was terminated from his employment on October 9, 1997. *See* Compl. ¶ 6. Bricker alleges that he met with other Federal–Mogul employees on September 26, 1997 to discuss ISO 9000 compliance [1] at the plant in advance of a scheduled compliance audit. *See* Compl. ¶ 8. At this meeting, Greg Boots, the company's internal ISO officer, announced that according to his pre-audit review the plant was not in compliance with ISO 9000 standards because there was no retest within the required 30 days after preventive maintenance tests conducted on July 30, 1997 revealed motor failure in two McNeil mold presses. In fact, no retest had been conducted in the nearly two months that had already passed. *See* Compl. ¶ 8. In response to questioning by Don Oesterling, Plant Engineer, Boots stated that there was no way to comply at this late date unless they backdated the records. *See* Compl. ¶ 9.

After Boots left the meeting, Oesterling instructed Bricker to conduct the retest and backdate the tests to one week after the original preventive maintenance test date. *See* Compl. ¶ 9. Bricker made no response at that time. The following morning, Tom Fullenwider, Maintenance Foreman, who had also been present at the compliance meeting, told Bricker to conduct the retests on Sunday night and repeated Oesterling's instruction to backdate the tests. *See* Compl. ¶ 10. Bricker refused. After making further unsuccessful efforts to persuade Bricker to conduct the tests and backdate them as requested, Fullenwider ordered Bricker to conduct the retests and place the results unsigned and undated on Fullenwider's desk. *See* Compl. ¶ 10. Bricker conducted the retests and placed them on Fullenwider's desk, undated and unsigned, as instructed. *See* Compl. ¶ 11. Bricker also drafted a memorandum distributed to Oesterling and Al Houser, Plant Manager, among others, warn-

---

1. "The International Organization for Standardization ... is a worldwide federation of national standards bodies that promulgates technical specifications and other criteria in various industries." *Novo Nordisk A/S v. Becton Dickinson and Co.*, 997 F.Supp. 470, 476 (S.D.N.Y.1998). "The International Organization for Standardization created the ISO 9000 standard as the standard for products traded across international borders. ISO 9000 certification requires exhaustive documentation of manufacturing operations and processes, and intimate knowledge of rigid criteria." *Williams v. Imperial Eastman Acquisition Corp.*, 994 F.Supp. 926, 928 (N.D.Ill.1998).

ing of the possible loss of ISO certification if documents were backdated in an attempt to deceive the ISO auditor. Bricker met with Houser and Dan Frey, Personnel Manager, on September 29, 1997, and Houser told Bricker he would investigate the situation and that Bricker's job position was secure. *See* Compl. ¶ 12. The plant management immediately began a coverup that culminated in Bricker's termination on October 9, 1997. *See* Compl. ¶ 2.

Bricker brought the present action in Tippecanoe County Circuit Court on February 20, 1998, asserting that Federal–Mogul fired him "in retaliation for his refusal to alter maintenance records to falsely reflect compliance with ISO 9000 standards, and for opposing efforts by others to falsify the records." Compl. ¶ 18. Bricker contends that his termination "violates state common law, was intentional and willful, and was done in reckless disregard of Bricker's common law rights." Compl. ¶ 19. Federal–Mogul removed the case to federal court on diversity grounds on March 19, 1998. In its motion to dismiss under Rule 12(b)(6), Federal–Mogul argues that Bricker's complaint does not state a claim upon which relief may be granted because Indiana recognizes the doctrine of employment-at-will and Bricker has not alleged or established that he satisfies one of the three limited exceptions to the presumption of employment-at-will.

### STANDARD OF REVIEW

On a motion to dismiss pursuant to Rule 12(b)(6), we must determine whether the plaintiff's complaint states a claim upon which relief can be granted. *See* Fed. R.Civ.P. 12(b)(6). The Court must examine the sufficiency of the plaintiff's complaint, not the merits of his lawsuit. *See Triad Assocs. v. Chicago Housing Auth.*, 892 F.2d 583, 585 (7th Cir.1989). "Accordingly, the motion should not be granted unless it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir.1993) (citation omitted); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Jones v. General Elec. Co.*, 87 F.3d 209, 211 (7th Cir.1996). When reviewing a motion to dismiss, we accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 165, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Dawson v. General Motors Corp.*, 977 F.2d 369, 373 (7th Cir.1992).

### DISCUSSION

Indiana recognizes the doctrine of employment-at-will, which provides that in the absence of an employment contract for a definite term, an employer may discharge an employee for any cause or no cause without incurring liability. *See Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 717 (Ind. 1997); *Wior v. Anchor Indus., Inc.*, 669 N.E.2d 172, 175 (Ind.1996). Bricker concedes that he was an at-will employee of Federal–Mogul. *See* Plaint. Resp.Br. at 3. However, Indiana courts have recognized a limited public policy exception to the employment-at-will doctrine, allowing an at-will employee a cause of action for wrongful discharge "if a clear statutory expression of a right or duty is contravened." *Orr*, 689 N.E.2d at 718; *see also McClanahan v. Remington Freight Lines*, 517 N.E.2d 390, 393 (Ind.1988); *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425, 428 (Ind.1973). Bricker claims that the public policy exception applies to the facts of this case.

The narrow public policy exception to the employment-at-will doctrine in Indiana has its roots in the *Frampton* decision. The Indiana Supreme Court in *Frampton* held that an employer who retaliates against an employee for filing a worker's compensation claim pursuant to the Indiana Workmen's Compensation Act or the Indiana Workmen's Occupational Diseases Act would be liable for wrongful discharge, stating, "[U]nder ordinary circumstances, an employee at will may be discharged without cause. However, when an employee is discharged solely for exercising a statutorily conferred right an exception to the general rule must be recognized." *Frampton*, 297 N.E.2d at 428. In

*McClanahan,* the Indiana Supreme Court clarified that the public policy exception identified in *Frampton* also applies to an employee who is fired for fulfilling a statutory duty, holding that a truck driver who was fired for refusing to carry a load in excess of Illinois weight limits had stated a claim for wrongful discharge. The supreme court stated, "[F]iring an employee for refusing to commit an illegal act for which he would be personally liable is as much a violation of public policy declared by the legislature as firing an employee for filing a workmen's compensation claim. A separate but tightly defined exception to the employment at will doctrine is appropriate under these facts." *McClanahan,* 517 N.E.2d at 393.

The Indiana courts have found the public policy exception to be "limited and strictly construed" (*Bienz v. Bloom,* 674 N.E.2d 998, 1002 (Ind.Ct.App.1996)) and "have steadfastly refused to extend the exception beyond the narrow boundaries set forth in Frampton and McClanahan," (*Knight v. Pillsbury Co.,* 761 F.Supp. 618, 621 (S.D.Ind.1990)), choosing instead to leave expansion to the Indiana legislature. *See Wior,* 669 N.E.2d at 178 n. 5 ("Generally, we are disinclined to adopt generalized exceptions to the employment-at-will doctrine in the absence of clear statutory expression of a right or duty that is contravened"); *Knight,* 761 F.Supp. at 621 ("revision or rejection of the [employment-at-will] doctrine is better left to the legislature"); *Morgan Drive Away, Inc. v. Brant,* 489 N.E.2d 933, 934 (Ind.1986) (same); *Hamblen v. Danners, Inc.,* 478 N.E.2d 926, 929 (Ind. Ct.App.1985) ("in the absence of statutory directives, we decline to find a violation of public policy . . .").

Federal–Mogul argues that Bricker's claim must fail because he has not demonstrated that he qualifies for the public policy exception to employment-at-will in his complaint or in his response to Federal–Mogul's motion to dismiss. Federal–Mogul contends that in order to survive a motion to dismiss, Bricker must allege the existence of a statutory right or duty that Federal–Mogul forced him to forego or violate. The Indiana Court of Appeals so held in *Campbell v. Eli Lilly and Co.,* 413 N.E.2d 1054, 1061 (Ind.Ct.App.1980),

stating, "We conclude from Frampton that in order to fall within a recognized exception to the employment at will rule, a plaintiff must demonstrate that he was discharged in retaliation for either having exercised a statutorily conferred personal right or having fulfilled a statutorily imposed duty in order to state a claim upon which relief may be granted."

Bricker argues that his complaint satisfies the liberal requirements of notice pleading. He asserts, "Absent some clear holding as to the nature of the unlawful acts for which a plaintiff might be held personally liable, it is fair to conclude that the phrase 'unlawful act' would include torts and breaches of contract as well as violations of statutes and regulations" and that "it is certainly conceivable— and therefore within the bounds of a well-pleaded complaint—that he would be held liable for falsifying the documents on which an ISO 9000 certification was based." Plaint. Resp.Br. at 7. Bricker contends further that "one can readily imagine defendant pointing the finger at Bricker in response to any [intentional tort] suit" and that "one can also imagine Bricker being liable in either a criminal action for forgery or a civil action for an offense against property," citing Ind.Code §§ 35–43–5–2 and 34–4–30–1.

■ Bricker asserts that a tort or breach of contract might constitute an "illegal act" so as to satisfy the public policy exception to at-will employment, ignoring the well-developed Indiana case law setting forth the requirement that the conduct be proscribed by statute. Bricker cites no statute governing the type of tort or contract violations he alludes to, and our independent research has uncovered none. In addition, Bricker claims that it is conceivable that he might be liable for forgery, with no further development of this legal argument. However, after examining Indiana's forgery statute, it is clear that it is inapplicable. Ind.Code § 35–43–5–2 defines the crime of forgery as follows: "A person who, with intent to defraud, makes or utters a written instrument in such a manner that it purports to have been made: (1) by another person; (2) at another time; (3) with different provisions; or (4) by authority of one who did not give authority; commits forgery, a Class C felony." Ind.Code § 35–

43-5-1 defines "written instrument" as "a paper, document, or other instrument containing written matter and includes money, coins, tokens, stamps, seals, credit cards, badges, trademarks; medals, or other objects or symbols of value, right, privilege, or identification." On its face, the forgery statute does not apply to the facts of this case, as a maintenance report is not a document akin to the "objects ... of value, right, privilege, or identification" listed in the statutory definition of "written instruments," and Bricker makes no argument to support its application.

Bricker also makes passing reference to Ind.Code § 34-4-30-1, which section has been repealed and now is found at Ind.Code § 34-24-3-1, which statute provides for civil damages for victims of criminal forgery. Because we have rejected Bricker's criminal forgery argument, we find necessarily that the civil damages provision is similarly inapplicable to the facts of this case. Bricker fails to identify any other statute that confers a right or imposes a duty upon Bricker to either refrain from falsifying documents used for ISO 9000 compliance audits or to report any wrongdoing connected with the audit process, and we have been unable to locate any relevant statute. Federal–Mogul and Bricker both describe the ISO 9000 compliance process as voluntary, and there appears to be no state or federal governmental regulation.

■ After reviewing the parties' arguments and examining the complaint, we find that Bricker has not stated a claim upon which relief may be granted. Bricker's complaint alleges merely that his retaliatory discharge "violates state common law" and "was done in reckless disregard of Bricker's common law rights." We find that such allegations are not sufficient to support Bricker's claim even under the liberal notice pleading standards in federal court. Bricker must show that, taking as true all well-pleaded allegations in his complaint, he qualifies for an exception to the employment-at-will doctrine in order to state a claim for wrongful discharge under Indiana law. Bricker does not allege facts sufficient to give notice to Federal–Mogul that the public policy exception applies, such as which statute or statutes Bricker would have violated by falsifying the ISO 9000 compliance documents or by failing to report the falsification by others. "A complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory." *Sarratore v. Longview Van Corp.*, 666 F.Supp. 1257, 1258 (N.D.Ind. 1987) (quoting *Carl Sandburg Village Condominium Ass'n v. First Condominium Dev. Co.*, 758 F.2d 203, 207 (7th Cir.1985)).

■ Even if Bricker's complaint were sufficient to satisfy the liberal standards of notice pleading, we find that Bricker's failure to respond meaningfully to Federal–Mogul's motion to dismiss is fatal to his claim. "[Plaintiff] correctly states that his complaint need not contain the legal predicate for his claim. However, when presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action. The federal courts will not invent legal arguments for litigants." *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir.1995); *see also Carpenter v. City of Northlake*, 948 F.Supp. 759, 765 (N.D.Ill. 1996) (citing *Stransky* ); *Teumer v. General Motors Corp.*, 34 F.3d 542, 545–546 (7th Cir. 1994) (plaintiff waived legal theory when he "fail[ed] to mention it to the district court when the time did come in the proceedings ... to present legal arguments linking the claim described in the complaint to the relevant statutory (or other) sources for relief"); *Farnham v. Windle*, 918 F.2d 47, 51 (7th Cir.1990) (plaintiff's failure to brief legal theories supporting his claim in response to motion to dismiss constituted waiver). Federal–Mogul directly challenged Bricker's legal entitlement to relief in its motion to dismiss, but Bricker failed to respond with appropriate legal authority when the issue was raised. The Indiana Court of Appeals in *Campbell* held that dismissal of the plaintiff's wrongful discharge claim in that case was appropriate because the plaintiff "has nowhere demonstrated a statutory source for the alleged right he claims to have exercised, nor has he demonstrated a statutory source for the duty he claims to have fulfilled. We do not recognize the general public policy exception urged by Campbell today to the

venerable at will employment doctrine we reconfirm today." *Campbell,* 413 N.E.2d at 1061.

The conduct alleged by Bricker—the falsification of maintenance documents for a voluntary compliance certification—is deceptive and unethical but does not appear to be illegal and thus does not qualify for Indiana's public policy exception to employment-at-will. Although we do not condone the business practices allegedly engaged in by Federal–Mogul, we decline to extend the public policy exception to the conduct alleged here in the absence of a clear statutory expression reflecting the public policy of Indiana. Accordingly, we hold that Bricker has not stated a claim upon which relief may be granted and *grant* Federal–Mogul's motion to dismiss.

### CONCLUSION

Defendant moves to dismiss Plaintiff's claim for wrongful discharge, contending that Plaintiff failed to demonstrate that he qualifies for an exception to the well-established rule of employment-at-will in Indiana. Defendant argues that Plaintiff failed to identify the source of any statutory right or duty that Defendant's termination of Plaintiff contravened and that Plaintiff accordingly has failed to state a claim upon which relief can be granted. For the reasons set forth in the discussion above, we *grant* Defendant's motion to dismiss.